## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| LYMAN MORSE BOATBUILDING, INC., ᴇᴛ ᴀʟ., | ) ) ) |
| PLAINTIFFS | ) ) |
| v. | )  No. 2:12-cv-313-DBH ) |
| NORTHERN ASSURANCE COMPANY OF AMERICA, INC., | ) ) ) |
| DEFENDANT | ) ) |

## DECISION AND ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

This is a dispute about an insurance company's duty to defend its insureds under a commercial general liability (CGL) policy. On the duty to defend, the record is stipulated. It consists of the applicable CGL policy (ECF No. 1-2) and a "Restated & Amended Arbitration Demand" ("Arbitration Demand") (ECF No. 1-1) for which the insureds requested a defense. I conclude on the stipulated record that the insurance company had no duty to defend the corporate insured, but that it did have an obligation to defend the individual insured.[1] There is also an unfair claims settlement practice claim. On that issue I conclude that the insurance company is entitled to summary judgment.

---

[1] Since the parties assume that Maine law applies, so do I.

## FACTUAL AND PROCEDURAL BACKGROUND

The dispute arises out of an insured boatyard's contract to build a luxury yacht for a third party.[2]  There were cost overruns and when the boatyard finally delivered the yacht, the buyer asserted a host of defects.  Ultimately the buyer sought arbitration claiming fraud, misrepresentation, and various contractual and warranty breaches.  Despite demand, the insurance company refused to defend its insureds in the arbitration proceeding.  The arbitration now is over.  The insureds do not seek insurance indemnification for the result.  But they do seek from the insurance company costs and attorney fees in defending the arbitration.  They also complain about the insurance company's delay in deciding whether to defend.

## ANALYSIS

"'Whether an insurer has a duty to defend in a particular case is a question of law.'"  Penney v. Capitol City Transfer, Inc., 707 A.2d 387, 388 (Me. 1998) (citations omitted).  Maine law is clear on how to determine duty to defend: a court must compare the allegations in the underlying complaint to the provisions of the insurance policy without considering the merits of the complaint or looking at extraneous evidence.  York Golf and Tennis Club v. Tudor Ins. Co., 845 A.2d 1173, 1175 (Me. 2004).  "The duty to defend arises if there is any potential basis for recovery against the insured and the recovery is an insured risk."  Id.  See also Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 66 (1st Cir. 2003) ("If the complaint shows even a possibility that the events

---

[2] There were some assignments of claims between a corporation and an individual but they are immaterial to this dispute.

2

giving rise to it are within the policy coverage, the insurer must defend the suit.") (quoting <u>Mass. Bay Ins. Co. v. Ferraiolo Constr. Co.</u>, 584 A.2d 608, 609 (Me. 1990)).  An insurer has a duty to defend claims "that could be developed either legally or factually at trial so as to fall within the policy's coverage," <u>Auto Europe, LLC</u>, 321 F.3d at 68.  Nevertheless, a court may not "speculate about causes of action that were not stated." <u>York Golf and Tennis Club</u>, 845 A.2d at 1175.

In this case, the insureds say that the Arbitration Demand required the insurance company to defend because, regardless of the underlying facts or final outcome, the Arbitration Demand raised a covered bodily injury and property damage claim.  Those are the issues that I will discuss.[3]

***Bodily Injury Coverage***

The buyer's claim in the Arbitration Demand for monetary damages consists of a "refund of all monetary amounts paid" to the boatyard, with interest; damages "equal to the value of the time, expenses and burdens imposed upon [the buyer]" while trying to get the boatyard to correct the defects; "damages . . . equal to at least the value of a refund of all monies paid by [the buyer to the boatyard]; "damages . . . .equal to at least the value of the return to [the buyer] of the amounts overpaid to [the boatyard] and the difference between the value of the 'highest quality' version of the Vessel that

---

[3] The insurance company's primary arguments are that there is no coverage for emotional distress and no emotional distress damages claimed; and that the exclusion for "Your product" precludes any property damage coverage.  It also argues in passing that overbilling and fraudulent billing are not covered.  Def.'s Resp. to Mot. for Partial Summ. J. and Def.'s Cross-Mot. for Summ. J. at 13 (ECF No. 18).  I deal with the primary arguments.  The latter arguments have no consequence for the decision on duty to defend.

[the boatyard] represented that [the buyer] would receive and the actual version [the buyer] received:  and punitive damages, attorney fees and costs and interest.   Arbitration Demand Prayer for Relief (ECF No. 1-1); see also Arbitration Demand ¶¶ 30-32, 39-40, 44-45, 47-48, 53-54, 59-60, 63-64, 75-78.  There is no claim for damages for bodily injury or emotional distress.

"Bodily injury" coverage under the CGL Policy is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Policy at 61 (ECF No. 1-2).  The insureds contend that this language "is broad enough to encompass non-physical, or mental and emotional injuries, including but not limited to emotional distress," Pls.' Mot. for J. on a Stipulated Record or, in the alternative, for Summ. J. at 12; that emotional distress damages qualify as bodily injury under Maine Law Court decisions; and that such a claim is possible under the buyer's Arbitration Demand here.

As the insureds assert, the Arbitration Demand does refer to "putting [the buyer's] life, limb and property and those of his family and loved ones at risk on the oceans and at sea."  Arbitration Demand ¶ 43.  That reference appears in the claim that there was a trust relationship between the buyer and the boatyard:

> A special relationship of trust and confidence existed and exists between [the buyer and the boatyard] in that [the buyer] entrusted [the boatyard] with the construction and completion of what was to become [the buyer's] full-time dwelling and residence on the oceans and otherwise at sea where the risks to life, limb and property are substantial and where multiple precautions must reasonably be taken to assure that such risks are minimized.

Id. ¶ 42.  That language asserting a relationship of trust and confidence lays the foundation for a claim of constructive fraud and breach of trust and the economic damages that the buyer seeks, but it makes no claim that the buyer suffered any emotional distress for which he seeks damages.

Nevertheless, in light of York Ins. Group v. Lambert, 740 A.2d 984 (Me. 1999), I proceed farther with the analysis.  In that 4/3 decision, the Law Court criticized a Superior Court decision finding no duty to defend because the lower court examined evidence *beyond* the pleadings.   Examining solely the complaint and the policy (as I am doing here), the Law Court held that even where a complaint does not explicitly *request* emotional distress damages, the insurance company has a duty to defend its insured in a lawsuit over interference with an expectancy of an inheritance, because "the general allegations of interference with an expectancy of inheritance claim carry the possibility of an award of emotional distress."  Id. at 986.

This yacht construction case in not an expectancy of inheritance case,[4] and the parties have cited no Maine cases holding that a constructive fraud claim "carr[ies] the possibility of an award of emotional distress."[5]   To the contrary, Maine law does not allow emotional distress damages in cases of

_____

[4] The  Arbitration  Demand  here  made  claims  of  (1) intentional  fraud;   (2) negligent misrepresentation; (3) constructive fraud; (4) breach of contract; (5) rejection and revocation of acceptance; (6) breach of implied warranty of fitness for a particular purpose; (7) breach of implied warranty of merchantability; (8) unfair and deceptive trade practices.   Arbitration Demand ¶¶ 24-78.

[5] Lambert explicitly did not reach the insured's arguments related to whether the breach of fiduciary duty (constructive fraud) and conversion claims in that case contained allegations of and requests for damages that could potentially be characterized as "bodily injury" under the policy definition of "bodily harm, sickness or disease."  Lambert, 740 A.2d at 985-86.

fraud and negligent misrepresentation.[6]   Maine law also does not allow
emotional distress damages for contractual claims, the gist of all the other
arbitration claims that the buyer advanced.[7]   In the Arbitration Demand, the
buyer did not request emotional distress damages and the nature of his claims
are such that, unlike Lambert, they do not carry the possibility of an emotional
distress award.

Finally on this issue, recent Maine Law Court decisions have clarified
Maine law on how to determine whether the bodily injury clause in an
insurance contract covers emotional distress damages.  If the adjective "bodily"
can grammatically modify each of the nouns following it (as in injury, sickness

---

[6] Jourdain v. Dineen, 527 A.2d 1304, 1307 (Me. 1987) ("damages for emotional or mental pain
and suffering are not recoverable" on fraud claim); Chapman v. Rideout, 568 A.2d 829, 830
(Me. 1990) (quoting the Restatement in limiting damages for negligent misrepresentation to
"pecuniary loss"); Gamache v. Kingfield Savings Bank, 2000 WL 33671782 (Me. Super. 2000)
(emotional distress damages not recoverable under the negligent misrepresentation).

[7] In the absence of physical injury, damages for emotional distress resulting from a breach of
contract are recoverable under Maine law only where the contract is "such that a breach of it
will result in serious emotional disturbance, such as contracts between innkeepers and
carriers, contracts for the disposition of dead bodies, and contracts for the delivery of messages
concerning death."  Marquis v. Farm Family Ins. Co., 628 A.2d 644, 651 (Me 1993) (citing
Rubin v. Matthews Int'l Corp., 503 A.2d 694, 696 (Me. 1986)).  That is not this case.  As for
UCC claims (rejection and revocation of acceptance; breach of implied warranty of fitness for a
particular purpose; breach of implied warranty of merchantability), there appear to be no
Maine Law Court decisions on point, but those courts that have considered the issue have
determined that emotional damages are generally not recoverable in a standard breach of
warranty action under the UCC.  See, e.g., Bennett v. CMH Homes, Inc., No. 3:08–01212, 2012
WL 5416481 (M.D.Tenn. November 6, 2012) (damages for mental distress are not available in
breach of warranty action under UCC); Kwan v. Mercedes-Benz of N. Am., Inc., 23 Cal.App. 4th
174, 187-92 (Cal. 1994) (discussing law on emotional distress claims in warranty and contract
cases and holding that emotional distress damages are not available for breach of warranty
under the UCC in a contract for sale of a car).  The UCC is to be construed to "make uniform
the law among the various jurisdictions."  11 M.R.S.A. § 1-1103(1)(c).  The final count of the
Arbitration Demand asserts claims under the Maine Unfair Trade Practices Act, 5 M.R.S.A.
§ 207, and the Home Construction Contract statute, 10 M.R.S.A. § 1487.  The UTPA provides a
private cause of action only for someone who "suffers any loss of money or property" as a result
of a purchase.   5 M.R.S.A. § 213(1).   Private relief "is available only if the consumer has
suffered a 'loss of money or property' as a result of a[n] [UTPA] violation."  Parker v. Ayre, 612
A.2d 1283, 1285 (Me. 1992).  Emotional distress damages are not included.  Under the Home
Construction Contract statute, civil violations are available or a violation can be treated as a
violation of the UTPA, 10 M.R.S.A. § 1490, thus likewise not affording emotional distress
damages.

or disease), then emotional distress damages are not insured because they are not bodily injury, bodily sickness or bodily disease.  But if grammatically the adjective "bodily" can*not* apply to all the nouns that follow it (as in bodily injury, sickness or death, where "bodily death" is nonsensical), then the adjectival limitation is ambiguous, ambiguities are resolved against the insurance company and emotional distress damages *are* covered.  Compare Langevin v. Allstate Ins. Co., 66 A.3d 585, 592-93 (Me. 2013) and Ryder v. USAA General Indem. Co., 938 A.2d 4, 7-8 (Me. 2007). In the CGL policy language covering the insureds here, the bodily injury coverage is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Policy at 61.  That language is not grammatically ambiguous.   Under the Maine cases, therefore, it excludes emotional distress damages.   Thus, not only did the yacht buyer *not* claim emotional distress damages, but they were also unavailable.

### *Property Damage Coverage*

The CGL policy language defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  Policy at 63.  The insurance company does not dispute that the Arbitration Demand does allege some property damage.   But it rests its defense upon the CGL language that explicitly excludes some forms of damage from the property damage coverage.   The pertinent exclusion here is "k. Damage to Your [the insured's] Product."   That exclusion is defined as "'[p]roperty damage' to 'your product' arising out of it or any part of it."   Id. at 54.  Later, "Your product" is defined as:

    (1)     Any goods or products . . . manufactured, sold, handled, distributed or disposed of by:
        (a)     You;
        (b)     Others trading in your name; or
        (c)     A person or organization whose business or assets you have acquired; and
    (2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Id. at 64.

Under this language, the contracted-for new yacht, in its entirety with all its components as the boatyard delivered it to the buyer, clearly amounts to "Your product" so far as the boatyard is concerned. The definition states that the exclusion extends to whatever the insureds manufactured, sold, handled, distributed or disposed of. It also extends to "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'." Id.[8]

The buyer's Arbitration Demand is strident, but simple. It complains about the failure to build the yacht as promised, as well as overbilling. I have listed the claims for economic damage in dealing with bodily injury. They all have to do with what the buyer paid, the difference in value between the yacht as promised and actually delivered, and the value of the buyer's time, expense and burdens in dealing with the boatyard while trying to obtain satisfaction. There is no suggestion that somehow the yacht's defects damaged *other*

---

[8] The insureds argue that perhaps subcontractors were involved and that there is an exception for subcontractors. But that exception applies to a different exclusion ("Your work," not "Your product." Policy at 54.). There also is no hint in the Arbitration Demand that subcontractors were involved and I would have to consider evidence beyond the Arbitration Demand and the CGL policy to reach that conclusion, a step that the Law Court forbids. Finally, this case is unlike Oxford Aviation, Inc. v. Global Aerospace, Inc., 680 F.3d 85, 90 (1st Cir. 2012), where the insured was repairing an airplane and its work allegedly caused a crack in an airplane window that it did *not* furnish or install.

property. There is no suggestion, for example, that the buyer put cushions and equipment on the yacht that were damaged on account of defects. The insureds say that the Arbitration Demand is merely silent on this, but Maine law is clear that a court may not "speculate about causes of action that were not stated." York Golf and Tennis Club, 845 A.2d at 1175.[9] In short, the Arbitration Demand does not create a duty to defend for a claim of property damage on the new yacht, the boatyard's product.[10]

But there is a wrinkle here that appeared first in the insured's Reply Brief, distinguishing between the individual and corporate insureds, and I requested and received additional briefing on it. The Arbitration Demand named as defendants "LYMAN-MORSE BOATBUILDING, INC., a corporation,

---

[9] Thus, in Baywood Corp. v. Maine Bonding & Cas. Co., 628 A.2d 1029 (Me. 1993), when the claim was that the developers inadequately designed the sewer system, the Law Court did not speculate about damages to condominium units or to the sewer system itself. Instead it found no duty to defend because there was no allegation of actual damage to property, only damages for replacing defective workmanship. Likewise, in the recent case of Hardenbergh v. Patrons Oxford Ins. Co., 70 A.3d 1237, 1241 (Me. 2013), the Law Court found no duty to defend based upon the allegations of the complaint without speculating what else might be proved. "An insurer may properly refuse to defend a policyholder if the allegations of the complaint fall entirely within a policy exclusion." (quoting Mitchell v. Allstate Ins. Co., 36 A.3d 876, 880 (Me. 2011)).

[10] CGL policies are third-party coverage policies purchased to insure against liability, not to insure against first-party business risk. Lee R. Russ and Thomas F. Segalla, 9A Couch on Insurance § 129:1 (3d ed. 1995 & Supp. 2012) ("[A] commercial general liability insurance policy is generally designed to provide coverage for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained."); Couch on Insurance § 129.12 (business risk exclusions exclude coverage for "the expense of restoring, repairing, or replacing the insured's defective work"). See also F & H Constr. v. ITT Hartford Ins. Co., 118 Cal.App.4th 364, 372-73 (2004):

> [L]iability policies . . . . are not designed to provide [insureds] with coverage against claims their work is inferior or defective. [Rather,] [t]he risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. . . . In short, a liability insurance policy is not designed to serve as a performance bond or warranty of a contractor's product.

Id. (internal quotations and citations omitted).

[and] CABOT LYMAN, an individual." On the "Declarations" page, the policy lists the insured as "LYMAN MORSE BOATBUILDING CO., INC. CABOT & HEIDI LYMAN ATIMA."[11] Policy at 8. Cabot Lyman, an individual insured, points out that he did not personally enter into the yacht construction contract, and that the new yacht was not *his* product but the boatyard's product. He argues, therefore, that the "Your product" exclusion applies only to the insured boatyard and does not extend to his liability as an individual insured. Pls.' Reply Br. at 4.[12] As a result, he argues, the insurance company had the duty to defend him against liability as an individual even if it did now owe the boatyard any duty to defend it.

The Arbitration Demand stated:

> Defendant Cabot Lyman ("Lyman") is an individual who is the alter ego of Defendant Lyman-Morse and who is in sole control of Defendant Lyman-Morse; he resides in Maine and is the controlling owner of Defendant Lyman-Morse. A unity of interest exists between Defendant Lyman and Defendant Lyman-Morse and injustice and fraud can only be avoided by piercing the corporate veil and by acknowledging that Defendant Lyman is the alter ego of Defendant Lyman-Morse and Defendant Lyman is jointly and severally responsible hereunder.

Arbitration Demand ¶ 4. Then, throughout the 15-page document with its eight causes of action, it referred repeatedly to the "defendants and each of them." Moreover, on the statutory Deceptive Trade Practices count, although it

---

[11] I find no definition of "ATIMA" in the policy provisions and the parties' briefs do not mention the acronym. Research reveals that the acronym stands for the phrase "as their interest[s] may appear." Boso v. Erie Ins. Co./Erie Ins. Exch., 669 N.E.2d 47, 50-51 (Ohio 1995); Brewer v. Vanguard Ins. Co., 614 S.W.2d 360, 364 (Tenn. 1980); Pappas v. Jack O.A. Nelsen Agency, Inc., 260 N.W.2d 721, 726 (Wis. 1978); Lee R. Russ and Thomas F. Segalla, 17A Couch on Insurance § 253.97 (3d ed. 1995 & Supp. 2012); David B. Goodwin, P. Benjamin Duke and R. Gregory Rubio, 5 Appleman on Insurance Law and Practice § 41.05 (2d ed. Supp. 2013).

[12] The policy states: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Policy at 14.

stated that the "Defendant Lyman-Morse [the boatyard corporation] expressly represents that it is 'world-class,' uses 'best practices' and deploys the 'finest craftsmanship spanning many generations' which insures the highest level of satisfaction," id. ¶ 66, it had a different accusation against the individual insured:

> Defendant Lyman [the individual] expressly represented to Plaintiff that he had extensive experience sailing worldwide including in the Caribbean and he was aware of the most common problems the Plaintiff would encounter during his travels in tropical and other varying conditions, including refrigeration and power consumption; as such he assured the Vessel would be completed to withstand these issues.

Id. ¶ 68.   The Arbitration Demand asserted that "Defendants, and each of them, knew the Representations and Further Representations described above were false and misleading at the time they were made." Id. ¶ 73.

Focusing on paragraph 4 of the Arbitration Demand, the insurance company tries to characterize the arbitration claim against the individual insured Cabot Lyman as solely an "alter ego" claim and argues that it would be wrong to allow broader insurance coverage for the individual than for the corporation whose alter ego he allegedly was.  If only paragraph 4 of the Arbitration Demand were in play, that might be a persuasive argument.  But the Arbitration Demand makes more than an alter ego claim, if only barely, and makes a claim based on Cabot Lyman's individual conduct.  Maine cases make clear that I must construe any insurance policy exclusion strictly against the insurance company.  Mitchell v. Allstate Ins. Co., 36 A.3d 876, 879 (Me. 2011). The yacht was the boatyard's product, not Cabot Lyman's product. Arbitration Demand Ex. 2 Yacht Construction Contract (ECF No. 1-1). I conclude that the

"Your product" exclusion does not justify the insurer's decision to refuse to defend Cabot Lyman the individual for what he allegedly said and did, and the insurance company has not advanced other arguments to justify refusing to defend him as an individual.

### *Unfair Claims Settlement Practices*

The insurance company has moved for summary judgment on the insureds' claim of unfair claims settlement practices under 24-A M.R.S.A. § 2436-A.  Although the insureds' complaint cited several subsections, in resisting the insurance company's motion they have rested solely on subsection D:  "Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim."  24-A M.R.S.A. § 2436-A(1)(D).  That is the subsection therefore that I address, namely, failing to deny coverage in a timely manner.

The following facts are not disputed.  The buyer filed his "Claimant's Restated and Amended Arbitration Demand and Claims for Rescission and for Damages for Intentional Fraud, Constructive Fraud, Misrepresentation, Breach of Contract and Deceptive Trade Practices" on July 22, 2011. Def.'s Statement of Material Fact ("Def.'s SMF") ¶ 3 (ECF No. 19); Pls.' Opposing Statement of Material Facts ("Pls.' OSMF") ¶ 3 (ECF No. 25).  The insureds filed their Answer on August 5, 2011, Def.'s SMF ¶ 4; Pls.' OSMF ¶ 4, as well as a Motion to Dismiss Claims and for Change of Venue.  Def.'s SMF ¶ 5; Pls.' OSMF ¶ 5.

The insureds first notified the insurance company of the claims on about August 22, 2011.  Def.'s SMF ¶ 6; Pls.' OSMF ¶ 6.  The insurance company declined to assume the defense on about September 6, 2011, stating that

"[u]nfortunately we are unable to comply with your request [for a defense] at this time as we do not have sufficient information to determine if coverage applies to the Causes of Action cited in the arbitration demand."  Def.'s SMF ¶ 8; Pls.' OSMF ¶ 8; Def.'s Resp. to Pls.' Additional Statement of Material Facts ("Def.'s Resp.") ¶ 14 (ECF No. 30).   On December 22, 2011, the insurance company confirmed that it would not provide a defense.  Def.'s SMF ¶ 8; Pls.' OSMF ¶ 8.

Notifying the insureds on September 6 that the insurer refused to provide a defense after receiving notice of the claim on August 22 is not unreasonable delay.[13]   The insureds complain that the insurance company did not need additional information to make its later final denial because, under Maine law, the insurance company had only to match the Arbitration Demand allegations against the policy language.   But there was no prejudice in the insurer's decision, after having refused a defense, to look into the matter further.  Further investigation outside the Arbitration Demand might have revealed that there was coverage anyway (*i.e.*, despite deficiencies in the Arbitration Demand) and have led to a defense, and it was not unreasonable for the insurance company to undertake that investigation.

## CONCLUSION

Under Maine law, the insurance company had no duty to defend the boatyard on the Arbitration Demand in this case, but it did have a duty to defend the individual insured.   Nevertheless, the time it took to notify the

---

[13] This is not like <u>Anderson v. Virginia Surety Co.</u>, 985 F. Supp. 182 (D. Me. 1998), where for 11 months the insurance company did not address the request for a defense.

insureds of its decision did not violate Maine's Unfair Claims Settlement Practices statute.[14]

On Counts I and II (breach of contract and declaratory judgment), the Clerk shall enter judgment on the stipulated record, see Boston Five Cents Sav. Bank v. Sec. of Dept. of Housing and Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985), for the individual plaintiff Cabot Lyman, but for the defendant as to the boatyard's claim of a duty to defend.  The Clerk shall enter summary judgment for the defendant on Count III.  The plaintiffs' motion for summary judgment is **DENIED**.

**SO ORDERED.**

**DATED THIS 27TH DAY OF SEPTEMBER, 2013**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[14] Also, the question of coverage was sufficiently uncertain that there was no bad faith in denying the duty to defend.