UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LYMAN MORSE BOATBUILDING, INC., ET AL., | ) ) ) |
| PLAINTIFFS | ) ) |
| v. | ) No. 2:12-cv-313-DBH ) |
| NORTHERN ASSURANCE COMPANY OF AMERICA, INC., | ) ) ) ) |
| DEFENDANT | ) |

### DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES

When an insurer wrongly refuses to defend an insured, but the insured obtains a defense from an uninsured party that was also sued on the underlying claims, and the insured does not pay for the defense it thereby receives, can the insured then recover defense fees and expenses from the insurer? I conclude that, at least where the party who did pay is not seeking recovery, the insurer must pay defense fees and expenses to the insured whom it wrongly refused to defend. Here, there is no precise basis upon which to allocate the defense fees and expenses between those attributable to defending the insured and those attributable to defending the uninsured party who paid them. I conclude that the insurer equitably should pay 50% of those amounts.

### BACKGROUND

The underlying complaint asserted defective-yacht-construction claims against both a corporation and an individual who was a principal shareholder

and officer. In the face of the insurer's refusal to provide a defense to either the corporation or the individual, the corporation hired lawyers and incurred fees and expenses to represent them both. An arbitration proceeding resolved the underlying claims: the individual insured was exonerated, and the corporation was held liable for a moderate portion of the damages requested.[1] I have ruled in this case that, although the insurer had no duty to defend the corporation, it did have a duty to defend the individual. Lyman Morse Boatbuilding, Inc. v. Northern Assur. Co. of America, 2013 WL 5435204 (D. Me. Sept. 27, 2013). That is now law of the case.

In light of my ruling that the individual did have the right to a defense by the insurer and notwithstanding my ruling that the corporation did not have the right to such a defense, the individual insured has filed a motion for summary judgment seeking to recover from the insurer all the attorney fees and expenses incurred in defending both the individual and the corporation during the arbitration. The insurer, on the other hand, argues that since the individual insured paid nothing for his defense,[2] he suffered no damages resulting from the insurer's failure to defend him and therefore that he may recover nothing at all from the insurer. Alternatively it argues that the individual insured should recover no more than 10% of the amounts expended. The parties agree that the total defense fees and expenses were reasonable,[3]

---

[1] The underlying claim requested in excess of $4.7 million, along with trebling and attorney fees. The Arbitrator awarded $389,120, but no trebling or attorney fees. PSMF ¶¶ 26, 28, 29 (ECF No. 47); DRSMF ¶¶ 26, 28, 29 (ECF No. 51).
[2] But see notes 4 & 8 infra.
[3] I say that because, except on the allocation issue, the insurer failed to respond to the insured's argument that the total fees and costs were reasonable, Plaintiffs' Motion for
*(continued next page)*

and that the corporation paid or reimbursed them all.[4] They also agree that when an insurer breaches its obligation to defend, it is responsible for the damages that result, and that typically those are "the necessary attorneys' fees and costs incurred by that insured in the defense of the underlying action." Def.'s Response to Pls.' Mot. for Summ. J. on Damages at 4 (ECF No. 50) ("Def.'s Response").

## ANALYSIS

The insurer argues that I should treat this dispute as if the individual insured had two insurance policies written by either the same insurer or two different insurers and received a full defense under one but not the other policy. Relying on a line of California intermediate appellate court cases, Def.'s Response at 7, it argues that in such circumstances, "'an insured is entitled to only one full defense'. . . . An insurer that has allegedly breached its duty to defend may demonstrate that its insured suffered no damages from its alleged breach by demonstrating that its insured received a full and complete defense,

---

Summary Judgment on Damages at 8-10 (ECF No. 41), and affirmatively agreed that the attorney fees and rates were reasonable. PSMF ¶¶ 31-33 (ECF No. 47), DRSMF ¶¶ 31-33 (ECF No. 51).

[4] Initially, the insurer asserted that although the corporation had paid the legal fees and arbitrator expense, the available information was not "sufficient to ascertain which of the other expenses, if any, were in fact paid by [the individual] and whether those payments were reimbursed by the company." Def.'s Response at 3-4 (ECF No. 50). Later, the parties filed a stipulation reflecting direct payment or reimbursement by the corporation as to certain expense categories with a residual statement that "[a]ll other amounts referenced in [the individual's] affidavit as litigation related expenses were paid by [the individual and the corporation] and [the corporation] reimbursed [the individual] for some of the expense paid by him." Stipulation ¶ 4 (ECF No. 52). On this motion for summary judgment on damages, I treat it as the insured's burden to show any amounts for which he has not been reimbursed and conclude that he has failed to do so. Accordingly, I decide the motion on the premise that there are no demonstrable expenses for which he was not reimbursed.

3

notwithstanding its breach." Risely v. Interinsurace Exch. of the Auto. Club, 107 Cal. Rptr. 3d 343, 352 (2010) (citations omitted).[5]

I am not persuaded that this line of insurance cases helps resolve the dispute here. In purchasing insurance, an insured pays a premium to obtain an insurer's ability and experience to investigate and evaluate claims and defend against them. Arguably an insured receives just that when one, even though not all, of his carriers provides the defense. But a principal shareholder who creates or buys a business corporation to run a yacht-building business is not thereby purchasing an insurance defense. Here, despite the premium payments, this individual insured did not obtain any defense under his insurance coverage. Instead, he obtained a defense because the corporation of which he was the principal shareholder decided to provide one for him. The insurer has not pointed to anything in the record or Maine law to suggest that the corporation had any insurance-like obligation to do so;

---

[5] The other California cases the insurer cites are Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Co., 31 Cal. Rptr. 3d43 (2005); Horace Mann Ins. Co. v. Barbara B., 71 Cal. Rptr. 2d 350 (1998); Ceresino v. Fire Ins. Exch., 264 Cal. Rptr. 30 (1989); and Tradewinds Escrow, Inc. v. Truck Ins. Exch., 118 Cal. Rptr. 2d 561 (2002). Only Tradewinds seems to be an unqualified statement of the principle. In Wint v. Fidelity & Cas. Co., 107 Cal. Rptr. 175, 179 (1973), the California Supreme Court earlier stated: "This court has, in fact, held that where more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform." But the later cases by California's intermediate appellate courts limited that statement to the facts in Wint, namely, an insurance defense under a policy with small limits and no defense under policies with large dollar coverage. In Risely, 107 Cal Rptr. 3d at 357-58, for example, despite the language quoted in text above, the court found that the insured could recover damages for the failure to defend because the policy under which the other insurer did defend had lower policy limits. Emerald Bay was a case where both insurers did contribute to defense fees, but the insured wanted more from one and refused to pursue the claim as a subrogee of the other insurer. Horace Mann is also a case where the recalcitrant insurer did defend but stopped when it obtained a court decision holding that it had no duty to defend (later reversed on appeal). Ceresino stated that the real consequence in these cases is to the insurer who *did* pay for the defense. In Ceresino, that insurer sought one-half reimbursement from the insurer who wrongfully refused, but the opinion does not address what happened to that request. See also note 10 infra.

it has pointed to no indemnification contract or bylaw, and no relevant statutory requirement.[6]

Instead, as the individual insured argues, the relevant principle comes from Maine's collateral source rule. Under that rule, an injured party, although compensated in whole or part by a third party, can nevertheless obtain full recovery against the wrongdoer. Potvin v. Seven Elms, Inc., 628 A.2d 115, 116 (Me. 1993); Werner v. Lane, 393 A.2d 1329, 1335 (Me. 1978). Maine's Law Court reasons that if there is to be a windfall, it should go not to the party in breach, but to the injured party. Id. at 1335-36.[7] Maine applies its collateral source rule to both torts and non-torts such as breach of contract. Potvin, 628 A.2d at 116. Here, the insurer is the wrongdoer and the injured party is the individual who was denied a defense by the insurer despite the insurance contract provisions; the individual insured found another source (the third party) to provide the defense that the insurer should have performed; and the insurer cannot now use that performance by a third party to exonerate itself from its breached duty. The Second Circuit reached just that conclusion in Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 623 n.15 (2nd Cir. 2001), stating that, on account of New York's collateral source rule, the

---

[6] See, e.g., 13-C M.R.S.A. § 853 (mandatory indemnification for expenses of a corporation's directors who successfully defend against a claim against them as directors).

[7] The insurer cites Anderson v. Virginia Surety Co., 985 F. Supp. 182, 192 n.14 (1998), for the proposition that "[a]n insured must actually bear a loss or cost in order for it to constitute 'damages.'" Def.'s Response at 6-7. But that Anderson footnote was construing the Unfair Claims Practices Act's provisions for damages, not the question here. In fact, Anderson did find a duty to defend and nowhere suggested that the recalcitrant insurer could escape paying the attorney fees and expenses. The court said that the other insurer (who did pay) argued that the recalcitrant insurer was "liable for not only half of the defense costs and attorneys' fees borne by [the insurer who paid] but also for the total costs of settlement." Id. at 189. Although the recalcitrant insurer challenged the indemnification argument, it does not appear that it challenged its obligation to pay the pro rata fees and expenses. Id.

fact that a parent company rather than the insured subsidiary paid defense costs did not prevent the subsidiary from recovering the defense costs.

The insurer rests heavily on its argument that the individual insured here paid no fees. Def.'s Response at 5, 6. I treat the summary judgment record as failing to establish that this individual insured is directly out-of-pocket for any amount.[8] Maine applies its collateral source rule, however, even in cases where the injured party paid no fees as, for example in the receipt of psychiatric services from the State where the State did not seek payment. Werner, 393 A.2d at 1336. Indeed, failing to apply Maine's collateral source rule here and letting the insurer escape all responsibility for the insured's defense would create the wrong incentives for insurers examining their duty to defend.[9] I conclude that in accordance with Maine's collateral source rule, the individual insured is entitled to recover the defense costs and expenses incurred on his behalf even though the corporation has paid them either directly or through reimbursement.[10]

---

[8] See note 4 supra. I say "directly" advisedly, because it is apparent that the individual insured *is* ultimately out-of-pocket in an undetermined amount. The corporation is subchapter S and the individual is the "principal" shareholder. Pls.' Statement of Material Facts at 1 (ECF No. 47). A loss or expense to the subchapter S corporation does affect its principal shareholder. Here, however, the parties have not revealed to me the individual insured's percentage of ownership beyond his being the "principal" shareholder. They also have not argued the effect of corporate or tax law on their dispute here. (The Internal Revenue Service treats subchapter S corporations like partnerships and their net profits are taxed as flowing through to the individual.)

[9] Analogously, in Anderson Judge Carter concluded that a wrongful refusal to defend should preclude the insurer from later litigating the issue of indemnification, because a contrary result would create perverse incentives for insurers to resist their duty to defend. 985 F. Supp. at 190-91.

[10] The proper outcome would have been more obvious if the corporation had made an equitable contribution or unjust enrichment claim against the insurer for an allocation of the fees and expenses it paid that inured to the insurer's benefit. See, e.g., Restatement (Third) of Restitution and Unjust Enrichment § 24. See also cases cited at note 20 infra. But it is a party to the lawsuit, represented by the same lawyer as the individual, and has made no claim.
*(continued next page)*

The harder questions are *how* to allocate the fees and expenses and *whether* they can be allocated. Both the corporation and the individual needed a defense, but the nature of their defenses overlapped substantially, albeit not entirely. (The underlying claims against them are summarized in my earlier decision. Lyman Morse Boatbuilding, Inc. v. Northern Assur. Co. of America, 2013 WL 5435204 (D. Me. September 27, 2013)). Here the individual insured asserts that it is "virtually impossible" to allocate the fees and expenses between defending the two. Pls.' Mot. for Summary Judgment on Damages at 4 (ECF No. 41). The insurer agrees, but adds the equivocal caveat, "based solely on the invoices produced." Def.'s Response to Pls.' Statement of Material Facts ¶ 22 (ECF No. 51). Discovery is complete, however, and the insurer suggests no alternative evidence on the allocation issue. I already have the insurance policy, the underlying claim, the defense fees and expenses incurred, and the insurer's statement that one of the factors preventing a "precise objective allocation" is "tracking time in a fashion not designed to accomplish that function." Def.'s Response at 13.[11] The material facts are not in dispute under Fed. R. Civ. P. 56, then, and the insurer has designated nothing to add in an evidentiary hearing.[12]

---

As a result, it cannot do so later. Whether there is some other shareholder who will be prejudiced by reimbursement to the individual/principal shareholder rather than the corporation is a question not before me (and probably only a theoretical, not a practical, question).

[11] In other words the documentation of fees and expenses does not make the allocation, an unsurprising circumstance since there was one insurance policy and both the corporation and the individual claimed the right to a defense under that policy throughout the proceeding.

[12] No argument is made that this is a burden of proof lapse attributable to either party. See, e.g., Lovely v. Allstate Ins. Co., 658 A.2d 1091 (Me. 1995), where, in an enhanced injury case, the Law Court said that the inability to produce evidence to support apportionment of damages means that the tortfeasor is responsible for the entire amount.

The parties have cited no Maine law on this allocation issue,[13] but the insurer contends that I can make an equitable allocation if I disagree with its argument of no recovery at all. It argues that "a reasonable allocation of fees and expenses to [the individual insured] is in the vicinity of 10% of all expenses incurred . . . ."[14] Def.'s Response at 13. The individual insured, on the other hand, presses his argument that *no* allocation is possible and that I must award him *all* defense fees and expenses (thereby resulting in the insurer paying for the corporation's defense, although the corporation was not entitled to an insurance defense).

If the insurer had fulfilled its duty to defend in the first place, then it would have engaged counsel for the individual insured, either the same counsel that the corporation used or, if there were a conflict of interest, different counsel. In the ordinary course there would have been an agreement at the outset on how to divide the defense and the expenses. See, e.g., discussion in Watts Water Tech., Inc. v. Fireman's Fund Ins. Co., 2007 WL 2083769, *6 (Mass. Super. July 11, 2007). Obviously that did not occur here. In a retrospective analysis, the insurer argues that the individual insured was not actually the primary defendant on the underlying claim, Defendant's Response at 3, that the claim against him was mostly a claim of alter ego to the corporation, id. at 2-3, and that the insurer should therefore be responsible for

---

[13] But see note 20 infra.
[14] The insurer goes on to argue: "If the Court does not believe such an allocation can be made on the present record, an evidentiary hearing should be held to facilitate that determination." Def.'s Response at 13. But as I have already described in text, there are no material factual disputes and no suggestion what additional evidence could be offered at an evidentiary hearing.

8

no more than 10% of the fees and expenses. The individual insured argues that the underlying claims against him were pursued until the end of the case,[15] that his personal assets were always at stake, that no allocation is possible, and that he should receive reimbursement for all the defense fees and expenses. Pls.' Reply Mem. at 8 (ECF No. 58).[16]

I conclude that it would be unfair for the insurer to go scot-free when it breached its duty to defend the individual, and Maine's collateral source rule does not allow that result. It would also be unfair to require the insurer to pay for the defense of both the corporation and the individual when I have concluded that the corporation was not entitled to a defense by the insurer. That would effectively expand the purchased insurance coverage, and the collateral source rule does not require that result.

On occasion, cases from other jurisdictions have made round-number allocations. See, e.g., Curtis v. Nutmeg Ins. Co., 681 N.Y.S. 2d 620 (N.Y. App. Div. 1998) (one-third/two-thirds); Morgan Lewis & Bockius v. Hanover Ins. Co., 929 F. Supp. 764, 773 (D.N.J. 1996) (fifty percent; albeit there, the court simply adopted the insurer's agreement to pay pro rata as "equitable and fair").[17] Where the allocation is between individual directors and officers who

---

[15] The Arbitrator refused to let him out of the case on earlier motions and he was exonerated only in the final arbitration award. Final Arbitration Award (ECF No. 53-1).

[16] I observe that if the law firm had, during the arbitration proceeding, attempted an allocation, those numbers might have been useful evidence. See, e.g., Curtis v. Nutmeg Ins. Co., 681 N.Y.S. 2d 620 (N.Y. App. Div. 1998) (upholding an allocation of 1/3 to the uninsured defendants in light of counsel's treatment of his bills)(semble). Here, the law firm apparently did not do that, and client interests now probably prevent or at least make suspect any retrospective attempt to do so.

[17] In Health-Chem, a case that the insurer cites in support of allocation, the judge said that further discovery was required to determine if allocation was possible, but that "allocation of
*(continued next page)*

are covered, on the one hand, and the uninsured corporation, on the other hand, one case lists four factors to consider—principal focus of the underlying claims; number of claims against each party; percentage of insured defendants; primary benefit of resolving the claims. Perini Corp. v. National Union Fire Ins. Co., 1988 WL 192453, *2 (D. Mass. June 2, 1988).[18]

In this case, given the underlying claimant's assertion of all his claims against both the individual and the corporation, and his successful efforts to keep the individual and his assets in the arbitration until the end, neither numbers and percentages, nor principal focus and primary benefit, are helpful.[19] The equities of this case do not favor a complete windfall to any party. The insurer refused to defend and was correct in refusing to defend the corporation, but incorrect in refusing to defend the individual. The corporation

---

fees is certainly mandated, if possible. This presents a substantial factual issue. . . ." Health-Chem Corp. v. National Union Fire Ins. Co., 559 N.Y.S. 2d 435, 438 (N.Y. 1990).

[18] In Watts Water Tech., 2007 WL 2083769, the court held that where parties enter into a joint defense after an insurer has forfeited its right to appoint counsel (there by a reservation of rights agreement, here by the outright refusal to defend), the insurer

> continue[s] to remain responsible to pay all reasonable attorney's fees incurred by [the insured's lawyers], provided the work is reasonably related to the defense of [the insured], regardless of whether that work . . . thereby benefits uninsured parties. . . . *However, when an insured enters into a joint defense, the inquiry regarding the reasonableness of the attorney's fees is broadened to include the reasonableness of the allocation of costs among the parties within the joint defense for work that benefits the joint defense. That allocation need not always be equal. . . . [E]quality is not always the outcome of the negotiations regarding the allocation of joint defense costs. The allocation must simply be reasonable in view of all the surrounding circumstances, considering the relative exposure of the parties to liability, the size of the parties, and the parties most benefitting from the joint defense work. The guidepost is the allocation that reasonably would have been negotiated had each party in the joint defense paid its own legal fees.*

Id. at *7 (emphasis added).

[19] If the corporation had been found not liable, it is unlikely, but still possible under ¶ 68 of Arbitration Restated complaint, that the individual would have been found liable. But the individual had additional defenses, and the arbitration's outcome demonstrated the distinction by holding the corporation, but not the individual, liable for damages.

and the individual both claimed coverage from the outset and did not identify a basis for the individual's coverage independent from that of the corporation (the argument that was ultimately successful) until recently, in the reply memorandum on the initial motions for summary judgment.

Under these circumstances, I conclude that Maine law permits an equal division of the fees and expenses as appropriate.[20]  Perhaps it approximates what the parties might have agreed to at the beginning ("ex ante" in the current jargon) had they known my ultimate duty-to-defend rulings, perhaps not, but it is fair regardless.

## CONCLUSION

Therefore, Cabot Lyman's motion for summary judgment on damages is **GRANTED**, but only in the amount of one-half the fees and expenses, namely, one-half of $369,071.69, plus interest.  I note that there is a separate request under 24-A M.R.S.A. § 2436-B for fees and costs incurred in this lawsuit.  Pls.' Mot. for Summ. J. on Damages at 10.  That will need to be addressed separately unless the parties resolve it by agreement.

**SO ORDERED.**

**DATED THIS 6TH DAY OF MARCH, 2014**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[20] Although the parties have not alluded to it, the Maine Law Court does recognize the doctrine of equitable contribution.  See, e.g., Daigle Commercial Group, Inc. v. St. Laurent, 734 A.2d 667, 675-76 (Me. 1999); Bragdon v. Worthley, 153 A.2d 627, 630-31 (Me. 1959).  Equitable contribution provides that "when parties assume a common obligation, those parties must share equally that obligation and burden." Daigle, 734 A.2d at 675-76 (citing Bragdon).